A06A2105, A06A2106. HUFFMAN v. ARMENIA et al. (two cases).
A07A0616. WILKINSON v. ARMENIA et al.
(645 SE2d 23)

ELLINGTON, Judge.

This opinion addresses three consolidated appeals from contempt orders issued by the Superior Court of Cobb County in the same case. In Case Nos. A06A2105 and A06A2106, David Huffman challenges two orders in which the trial court found him in contempt of a temporary restraining order. In Case No. A07A0616, Huffman's attorney, Neil Wilkinson, challenges the court's order finding him in contempt of the same order and ordering him to pay the appellees $32,000 in attorney fees. For the following reasons, we reverse the

---

trial court's contempt order in Case No. A06A2105. We affirm the court's orders in Case Nos. A06A2106 and A07A0616.

The record shows the following relevant, undisputed facts. The appellees, Joseph Armenia, Keith Armenia, and Gary Milkwick, are minority shareholders of Home & Equity Loan Products, Inc. ("HELP"). Appellant David Huffman is the chairman and president of HELP and a member of the corporation's board of directors. On December 20, 2005, the appellees filed a verified complaint, directly and derivatively on behalf of the corporation, against HELP's board of directors[1] for, inter alia, breach of fiduciary duty, gross negligence, fraud, civil RICO, and misappropriation of corporate opportunities. The same day, the appellees filed an emergency motion for a temporary restraining order and for the appointment of a receiver to assume control of HELP and another business, Dream Avenue Mortgage Corporation ("Dream Avenue"), which is owned by Huffman.

On January 6, 2006, the trial court conducted a hearing on the appellees' motions. Huffman appeared pro se at the hearing. During the hearing, the court made a verbal ruling appointing a receiver for HELP and Dream Avenue, requiring the HELP directors to cooperate with the receiver, and prohibiting the directors from transferring any corporate assets, doing anything that would deplete the assets, or interfering with the business of HELP and Dream Avenue. On January 19, 2006, the court issued a written order appointing the receiver and restraining Huffman and the other HELP directors from "misappropriating, converting, transferring, or otherwise using or depleting" the assets of HELP (hereinafter, the "TRO").

Despite the court's admonition, on January 13, 2006, during the period between the TRO hearing and the court's written TRO, Huffman, who is not an attorney, filed a pro se bankruptcy petition on behalf of HELP in the U. S. Bankruptcy Court of the Northern District of Georgia. There is no evidence, however, that HELP's board of directors had authorized Huffman to file the petition on behalf of the corporation.[2] In addition, Huffman failed to attach the required schedules to the bankruptcy petition.

In response to Huffman's filing of the petition, the appellees filed a motion with the trial court asking the court to find Huffman in contempt of the TRO. On January 26, 2006, the trial court conducted a motion hearing, during which it found that Huffman filed the

---

[1] The complaint named as defendants five HELP directors: Huffman, Sterling Wharton, Ronald Baker, James Cunningham, and Roger Donahue.

[2] Although Huffman's appellate briefs repeatedly claim that HELP's board of directors unanimously voted to authorize the filing of the bankruptcy petition and signed a resolution to that effect *before* the petition was filed, there is no evidence in the record in support of these statements and, in fact, the evidence contradicts these statements. See Division 5, infra.

bankruptcy petition in a "deliberate attempt to destroy" the appellees' lawsuit and, as a result, was in wilful contempt of the TRO. The court told Huffman that he could purge himself of the contempt by immediately filing a motion to dismiss the bankruptcy petition. The court issued a written order reflecting these rulings on February 20, 2006, nunc pro tunc January 26, 2006 (hereinafter, "Contempt Order I").

On January 31, 2006, Huffman filed a pro se motion to dismiss the bankruptcy petition. HELP's receiver also filed a motion to dismiss the bankruptcy petition. On February 14, 2006, the bankruptcy court held a hearing on the motions to dismiss. At that hearing, Huffman's attorneys, Neil Wilkinson and Paul Wright, withdrew Huffman's pro se motion to dismiss the bankruptcy petition and argued in opposition to the appellees' motion to dismiss the bankruptcy petition. When the bankruptcy court noted that the petition could not be properly filed unless there was a board of directors resolution authorizing it, Wilkinson specifically assured the court that HELP's board of directors had approved a resolution authorizing Huffman to file the bankruptcy petition, telling the court that he had "seen it." The bankruptcy court warned Wilkinson that "if you don't have that board resolution, you're sunk," so "if the board resolution exists, you'd better produce it." The court continued the hearing so Wilkinson could file the board's resolution and cure the remaining defects in the petition.

Two days later, Wilkinson contacted an attorney representing another HELP board member, Ronald Baker. Wilkinson told the attorney that the bankruptcy court had directed Baker to sign a resolution authorizing the bankruptcy petition in order to "cure this defect" in the bankruptcy filing. After consulting with Baker, the attorney signed the resolution on behalf of Baker on February 16, 2006. Wilkinson filed the resolution with the bankruptcy court on February 21, 2006. On March 2, 2006, however, the bankruptcy court dismissed the petition, finding that "the undisputed evidence shows that the Chapter 7 Petition was filed without the appropriate Board authorization" and that Huffman had failed to cure the defects in the petition.

On March 7, 2006, the trial court conducted another hearing to determine whether to hold Huffman, Wright, and Wilkinson in contempt of the TRO for failing to withdraw the unauthorized bankruptcy petition and for opposing the appellees' motion to dismiss the petition. In an order issued the next day, the court found that these acts were part of a deliberate effort to defeat the receivership, the TRO, and the appellees' lawsuit, and that Huffman's contumacious acts had cost the receiver and his attorney an "inordinate amount of

time and expense." Consequently, the court found Huffman in continued contempt and ordered him to pay $17,899 in fees to the receiver and the receiver's attorney (hereinafter, "Contempt Order II").

In a subsequent hearing, the court considered the appellees' motion for a citation of contempt and an award of attorney fees against Wilkinson. Following a hearing, the trial court found that, at the time Wilkinson filed the motion to withdraw Huffman's pro se motion to dismiss the bankruptcy petition, Wilkinson knew about the TRO. The court then found that Wilkinson deliberately violated the order and that his actions constituted contempt. The court also found that the bankruptcy action was interposed for delay, lacked any justification, and was based upon grounds that were frivolous, groundless, vexatious, and totally without merit. The court ordered Wilkinson to pay $32,000 in attorney fees to the appellees, and ruled that Wilkinson could purge himself of his contempt by paying the fees (hereinafter, "Contempt Order III").

1. As a preliminary matter, we address arguments by both Huffman and Wilkinson on appeal that the trial court found them in criminal, not civil, contempt of the TRO. In its contempt orders, however, the court specifically provided that Huffman and Wilkinson could purge themselves of the finding of contempt by paying the attorney fees and other expenses that resulted from their contumacious conduct or by taking other actions to bring them into compliance with the court's orders. Such a ruling was remedial in nature and served to coerce future compliance with those orders by providing a strong disincentive against further interference with the HELP receivership. See *Ensley v. Ensley*, 239 Ga. 860, 861 (238 SE2d 920) (1977) ("Where the primary purpose is to provide a remedy for an injured suitor and to coerce compliance with an order, the contempt is civil.") (citation and punctuation omitted). Accordingly, the three contempt orders at issue here involve civil contempt.

Because these appeals involve civil contempt, the standard of proof is the preponderance of the evidence. *In re Harvey*, 219 Ga. App. 76, 80 (464 SE2d 34) (1995). On appeal from a finding of civil contempt, "if there is any evidence from which the trial court could have concluded that its order had been violated, we are without power to disturb the judgment absent an abuse of discretion." (Citation omitted.) *Norred v. Moore*, 263 Ga. App. 516, 517 (588 SE2d 301) (2003).

*Case No. A06A2105*

2. Huffman contends that the trial court erred in finding that his filing of the bankruptcy petition constituted contempt of the TRO.[3] The record shows that Huffman filed the bankruptcy petition after the court issued a verbal ruling during the TRO hearing but before the court issued a written TRO. Because the court's written TRO had not been issued at the time Huffman filed the bankruptcy petition, the court erred in finding that Huffman violated the TRO by filing the petition.

> Under the Civil Practice Act (CPA), "except when otherwise specifically provided by statute, all judgments shall be signed by the judge and filed with the clerk." OCGA § 9-11-58 (a).... "The filing with the clerk of a judgment, signed by the judge, constitutes the entry of a judgment within the meaning of" the [Appellate Practice Act]. OCGA § 5-6-31. Under the case law, it is best to think of three requirements. The adjudication must be reduced to (1) writing, then (2) signed by the judge and finally, (3) filed with the clerk of the court. *What the judge orally declares is no judgment until it has been put in writing and entered as such.* Furthermore, "the filing with the clerk of a judgment, signed by the judge, constitutes the entry of the judgment, and, unless the court otherwise directs, no judgment shall be effective for any purpose until the entry of the same...." OCGA § 9-11-58 (b). *Until an order is signed by the judge (and is filed) it is ineffective for any purpose.*

(Citations and punctuation omitted; emphasis in original.) *In re Tidwell*, 279 Ga. App. 734, 739 (1) (b) (632 SE2d 690) (2006) (reversing a finding of contempt to the extent that it was based upon a violation of the court's verbal order). See also OCGA § 9-11-65 (d) (requirements for a valid TRO). Accordingly, we reverse Contempt Order I.

---

[3] Huffman also argues that the trial court erred in finding him in contempt because the corporation (HELP) was entitled to file for bankruptcy and the court lacked the authority to prevent HELP from doing so. Huffman's argument misses the point. The issue is not whether the court improperly tried to prevent the corporation (or the receiver on its behalf) from filing for bankruptcy. Instead, the issue is whether Huffman violated the TRO by acting unilaterally in filing the unauthorized, pro se petition on behalf of the corporation.

*Case No. A06A2106*

3. Huffman challenges Contempt Order II, arguing that the court erred in finding that his withdrawal of his pro se motion to dismiss his bankruptcy petition and his opposition to the receiver's motion to dismiss the petition constituted continuing contempt. The record shows that, unlike the act at issue in Case No. A06A2105 (the filing of the bankruptcy petition), the contumacious acts that supported Contempt Order II occurred *after* the court had issued the written TRO.[4] The issue, then, is whether Huffman's continued support of the unauthorized, pro se bankruptcy petition violated the TRO and, therefore, constituted contempt of the order.

As noted above, the undisputed evidence in the record shows that Huffman filed the pro se bankruptcy petition on behalf of the corporation, that Huffman is not a lawyer,[5] that neither the receiver nor the corporation's board authorized the petition before it was filed, and that Huffman had failed to attach the required schedules to the petition. Moreover, at the time of the February 14 bankruptcy hearing, Huffman knew that he had lacked the capacity and authority to file the petition on behalf of HELP. Even so, Huffman and his attorneys continued to fervently oppose efforts to dismiss the petition, going so far as to misrepresent to the bankruptcy court that the HELP board had passed a resolution authorizing the bankruptcy petition *before* Huffman had filed it.

Under these circumstances, the record supports a finding that Huffman's dogged pursuit of the bankruptcy action violated the TRO. We conclude that the court did not abuse its discretion in finding Huffman in continued contempt of court. *Norred v. Moore*, 263 Ga. App. at 517 (a court's finding of contempt will be upheld if there is any evidence to support it and the court did not abuse its discretion).

4. Huffman argues that the trial court erred in ordering him to pay part of the receiver's fees as a sanction for his contempt. In Contempt Order II, the court ordered Huffman to pay the fees in order to purge himself of the contempt. Huffman complains that the sanction violates OCGA § 15-6-8 (5).[6] The limitations imposed by OCGA § 15-6-8 (5), however, are not applicable to sanctions imposed

---

[4] To the extent that Huffman argues that the TRO violated the automatic stay provisions of 11 USC § 362 (a), the bankruptcy court specifically ruled that the stay did not apply to the appellees' direct claims against Huffman and the other HELP directors in the superior court.

[5] As a nonlawyer, Huffman lacked the capacity to file the petition on behalf of the corporation. *Eckles v. Atlanta Technology Group*, 267 Ga. 801, 805 (2) (485 SE2d 22) (1997) (holding that "only a licensed attorney is authorized to represent a corporation in a proceeding in a court of record") (citation omitted).

[6] Under OCGA § 15-6-8 (5), superior courts have the authority to punish contempt by imposing fines not exceeding $500 and by ordering imprisonment for no more than 20 days.

for civil contempt, as in this case. *In re Harvey*, 219 Ga. App. at 80; see also Division 1, supra. Therefore, this argument must fail.

5. In the briefs filed in this Court on behalf of Huffman, attorneys Wilkinson and Wright repeatedly and falsely stated that the HELP board of directors had unanimously authorized Huffman's filing of the bankruptcy petition *before* Huffman filed the petition on January 13, 2006.[7] The evidence of record contradicts such statements. Moreover, during a July 2006 contempt hearing in the court below,[8] Wilkinson admitted that he had never seen a board resolution authorizing the bankruptcy petition that had been signed before the petition was filed and that there was no evidence that the board had authorized the petition.

Wilkinson and Wright also falsely stated in the appellate briefs that the corporation "successfully opposed the receiver's motion to dismiss the Bankruptcy Petition and cured the non-fatal defects" in the petition. In fact, the record clearly shows the bankruptcy court dismissed the petition after finding that the petition was unauthorized and that Huffman and his attorneys had failed to cure the defects. Wilkinson admitted this during the July 2006 contempt hearing.

When questioned about these false statements in the briefs during the contempt hearing, Wilkinson testified that the statements were not an "intention[al] mistake" and, further, that he would inform this Court of his "mis-statement" of the facts. Yet, neither Wilkinson nor Wright has done so.

We find that the attorneys' actions in making false statements of material fact in briefs filed in this Court, and in failing to correct such statements after admitting that the statements were not true, evidence a blatant and intolerable disrespect for this Court. We thus

---

[7] The briefs contain, inter alia, the following false statements and blatant misrepresentations:

* "[O]n January 12, 2006 the [HELP] Board unanimously exercised its business judgment to direct the filing of a Chapter 7 petition."

* "The [bankruptcy] petition was properly authorized, . . . because the Board acted unanimously to approve the Petition."

* "The [HELP board's bankruptcy] resolution should have been attached to the Petition when filed, but was not."

* "[T]he trial court was asked to appoint a receiver over the assets of [HELP]. . . . [Then,] the board of directors of [HELP] unanimously voted to cause the corporation to file a Chapter 7 Bankruptcy Petition. . . . [T]he corporation then filed the Bankruptcy Petition."

* The bankruptcy petition was filed with the "unanimous consent of [the] directors."

* "The alleged contempt consists of lawful and proper corporate actions taken in the Bankruptcy Court, with the unanimous approval of the board of directors of the corporate debtor, Home Equity Loan Products, Inc."

[8] See Case No. A07A0616, infra.

require by separate order that Wilkinson and Wright show cause why they should not be cited for contempt, pursuant to Court of Appeals Rule 7.

### Case No. A07A0616

6. Wilkinson appeals from Contempt Order III, contending the trial court erred in finding him in contempt for assisting Huffman in the bankruptcy case because "any order seeking to prevent Huffman from utilizing federal bankruptcy proceedings was invalid." Wilkinson argues that "a state court receivership cannot operate to deny a corporate debtor access to this nation's federal Bankruptcy Courts."

As discussed in Division 3, supra, Huffman, a nonlawyer, had no right to file a pro se, unauthorized bankruptcy petition on behalf of HELP. Therefore, to the extent that the TRO prevented him from doing so, it was, at most, superfluous. Moreover, the TRO did not prevent any authorized person or entity from pursuing bankruptcy protection on behalf of HELP, nor did it prevent Huffman from filing personal bankruptcy. Accordingly, this enumeration lacks merit.

7. Wilkinson argues that the court exceeded the allowable limits it may impose for criminal contempt under OCGA § 15-6-8 (5). This argument fails for the same reasons discussed in Divisions 1 and 4, supra.

8. Wilkinson argues that he cannot be ordered to pay the appellees' attorney fees under OCGA § 9-15-14 (b)[9] if those fees were incurred as a result of his actions in the bankruptcy court.[10] In Contempt Order III, the court ordered Wilkinson to pay the appellees $32,000 in attorney fees.

The record shows that, as of April 12, 2006, the appellees had incurred $52,194.50 in attorney fees that were "directly attributable to the improper actions" of Huffman, another HELP director, and their attorneys. Of that amount, the appellees incurred $32,445 in

---

[9] Under OCGA § 9-15-14 (b), a
court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if . . . it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct.

[10] Wilkinson relies on *Harkleroad v. Stringer*, 231 Ga. App. 464, 472 (6) (499 SE2d 379) (1998), in which this Court held that "OCGA § 9-15-14 does not authorize an award of attorney fees or expenses for proceedings before a federal bankruptcy court; application of the statute is limited to courts of record where the Georgia Civil Practice Act applies." (Footnote omitted.)

fees as a result of the receivership action and the contempt actions in the trial court. The remaining amount, $19,759.50, resulted from the bankruptcy proceeding.

Under the circumstances, Wilkinson has failed to show that the trial court ordered him to pay any attorney fees that were incurred by the appellees in the bankruptcy action. See *Economic Exterminators of Savannah v. Wheeler*, 259 Ga. App. 192, 193 (3) (576 SE2d 601) (2003) ("The burden is on the party alleging error to show it affirmatively by the record.") (punctuation and footnote omitted). Therefore, this argument presents no basis for reversing the court's order.

*Judgment affirmed in Case Nos. A06A2106 and A07A0616. Judgment reversed in Case No. A06A2105. Johnson, P. J., and Miller, J., concur.*

DECIDED MARCH 20, 2007 —
RECONSIDERATIONS DENIED APRIL 10, 2007 — 

*Wilkinson & Wright, Neil L. Wilkinson, Paul T. Wright*, for Huffman.

*Krevolin & Horst, Jeffrey D. Horst, Michael J. Jacobs*, for Armenia et al.

*Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., James D. Johnson*, for Wilkinson.