

**FILED**

Mar 09 2015, 9:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Anthony B. Ratliff
Doninger Tuohy & Bailey LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Noah L. Gambill
Wagner, Crawford and Gambill
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stuart Reed and Michael Reed,

*Appellants-Defendants,*

v.

Michael Cassady,

*Appellee-Plaintiff.*

March 9, 2015

Court of Appeals Cause No. 49A05-1405-PL-220

Appeal from the Marion Superior Court

The Honorable Robert R. Altice, Jr., Judge

Cause No. 49D05-1207-PL-27350

**Brown, Judge.**

[1] Stuart Reed and Michael Reed (the "Reeds") appeal the trial court's order on April 22, 2014, related to certain discovery sanctions and contempt for failure to pay other previously-ordered sanctions. We affirm.

## *Facts and Procedural History*

[2] On July 10, 2012, Michael Cassady filed a Verified Complaint for Damages and for Declaratory and Permanent Injunctive Relief against Stuart Reed, Michael Reed, Distinctive Transportation Services, Inc. ("DTS"), Specialty Transportation, LLC ("Specialty"), and Executive Coach, LLC (collectively, the "Defendants"). Cassady alleged that he is a shareholder of DTS, that Stuart Reed is a shareholder of DTS and its president and sole director and a member of Executive Coach, LLC, that DTS is a full-service transportation company, that DTS has three shareholders, and that Cassady owns forty percent of DTS, Stuart Reed owns fifty-one percent of DTS, and Michael Reed owns nine percent of DTS. Cassady alleged that the Reeds used their corporate control of DTS to divert profits from DTS to other companies and unlawfully used DTS's assets for the benefit of other companies in which the Reeds had an ownership interest, that at one time, of the 136 cars that were titled to DTS, only seventy-nine were being used by DTS, that Cassady objected to the misuse of DTS's assets because it was causing DTS to lose significant profits and substantially impair the value of Cassady's shares in DTS, and that, in retaliation against his objections, the Reeds decided to terminate Cassady's employment with DTS and to distribute DTS's assets to other companies controlled by the Reeds. Cassady asserted three counts of breach of fiduciary duty, including for

oppressive conduct, corporate freeze out, and self-dealing, and counts of retaliatory discharge, breach of contract, and conversion, and he requested declaratory judgment.

[3] The Defendants filed counterclaims alleging in part that Cassady was negligent in his duties regarding the management of DTS and removed assets of DTS, and raising counts of breach of fiduciary duties and conversion.

[4] On April 30, 2013, Cassady filed a motion to compel discovery arguing that it had been since July 2012 that he served DTS with interrogatories and a request for production of documents, that DTS's only response was evasive interrogatory answers and a stack of nearly 1,900 pages of largely nonresponsive paper documents, and that DTS refused to produce certain readily-available financial documents, tax returns, and responsive email messages. Cassady attached to his motion copies of the discovery requests, copies of DTS's written discovery responses, and several letters by Cassady's counsel regarding the discovery, among other documents.

[5] On May 14, 2013, DTS filed a response to Cassady's motion to compel discovery arguing in part that it had bate-stamped the documents it produced and referred to bate numbers throughout its responses to aid review by Cassady's counsel, that Cassady's counsel had not raised any issues with the discovery responses for nearly six months, that Cassady's counsel then sent twenty pages of demands and insisted they be met within eight days, that the motion to compel was wholly unnecessary and filed in bad faith, and that the

court should award DTS attorney fees incurred in responding to the spurious motion.

[6]     On July 24, 2013, the court held a hearing on Cassady's motion to compel discovery, granted the motion, stated it wanted full and complete responses within thirty days, and scheduled a status conference for August 26, 2013. The court also discussed the scheduling of a deposition for October 2013 and stated that "some of the language in some of these motions could have been a poster child on both sides to show the young lawyers . . . how not to behave." Transcript at 40.

[7]     The court held status conferences on August 26, 2013, and September 30, 2013. At the latter, the court stated that it was going to grant fees because the court's "bark's got to be backed up," that it was going to award fees to Cassady in the amount of $10,000 for failure to comply, and that the amount must be paid within thirty days. *Id.* at 126.

[8]     An entry in the trial court's chronological case summary ("CCS") dated October 4, 2013, stated:

> Hearing Date: 09/30/2013
>
> Matter come on for a hearing regarding plaintiff[']s motion to compel; court finds that def's have still not complied and awards $10,000 for fees to plaintiff as a sanction for non compliance. Fee award to be paid within 30 days. . . .

Appellants' Appendix at 6. On October 4, 2013, the Defendants filed a motion to reconsider sanction, and on October 8, 2013, the court denied the motion.

On October 30, 2013, DTS filed a notice of appeal under Court of Appeals Cause No. 49A05-1310-PL-528 (the "First Appeal") with respect to the court's September 30, 2013 sanction order.

[9] On December 19, 2013, Cassady filed a motion for hearing, and on February 7, 2014, the court held a hearing and set the matter for another status conference on February 26, 2014. On February 12, 2014, the court issued an order which provided that DTS was to produce certain responsive email messages, including emails of Stuart and Michael Reed, and other documents on or before February 17, 2014.

[10] On February 26, 2014, the trial court held the scheduled status conference at which Cassady's counsel requested a monetary sanction of $30,000. The court stated to Defendants' counsel that it was "at [its] wits' end here," that it thought "the only way to get your client's attention is to impose sanctions for the discovery violations," and that it was going to impose $30,000. Transcript at 250. The court also stated "I'm going to give you 90 [days] because I'm going to tell you what the next sanction that I'm going to consider is a default judgment" and "I'm hopeful that that will work but, you know, if we're back here in 90 days and nothing's done, it's not going to be good." *Id.* at 251-252. The CCS entry dated February 26, 2014, for the status conference indicates the court found that "Defendants have not timely complied with this Court['s] February 12, 2014 Discovery Order and the Court imposes sanctions against the Defendants in the amount of $30,000" and "Court gives Defendants

additional 90 days to comply with outstanding discovery . . . .” Appellants’ Appendix at 10.

[11]     On March 4, 2014, the court entered an order which stated that Cassady had moved “to sanction the Defendants for their ongoing failure to cooperate in discovery,” that the court “now GRANTS [Cassady’s] Motion in all respects,” and that “the Defendants shall, within thirty (30) days of the date of this Order, pay Plaintiff Michael Cassady the amount of thirty thousand [dollars] ($30,000) as a sanction for the Defendants’ ongoing failure to cooperate in discovery.” *Id.* at 134.

[12]     On March 5, 2014, the Defendants filed a “Motion to Dismiss (Voluntary)” with this Court pursuant to Ind. Appellate Rule 36(A) requesting this Court “to dismiss this interlocutory appeal in its entirety.” Appellee’s Appendix at 18. The same day, the Defendants filed with the trial court a motion to reconsider the March 4, 2014 order and argued in part that “[t]he Order tendered by counsel for [Cassady] assesses sanctions against all defendants to this litigation, which was contrary to the February 26, 2014 hearing” and that “[t]he Court’s ruling was that discovery sanctions would be assessed against [DTS].” Appellants’ Appendix at 136.

[13]     On March 10, 2014, this Court granted the Defendants’ motion to dismiss and ordered that the First Appeal be dismissed with prejudice. On March 13, 2014, the trial court denied the Defendants’ March 5, 2014 motion to reconsider. On March 18, 2014, Cassady filed a Motion to Enforce the September 30, 2013

Order Sanctioning Defendants. In the motion, Cassady argued that "[t]he [D]efendants' only excuse for delaying payment to Mr. Cassady – the short-lived appeal of defendant DTS – is no longer valid because that appeal has been dismissed with prejudice" and that "[t]here is no reason for the defendants to delay any longer," and requested the court to order the Defendants to immediately pay him the $10,000 award which was substantially overdue. *Id.* at 138.

[14] On March 20, 2014, the court entered an order granting Cassady's motion to enforce and ordered the Defendants to pay Cassady the amount of $10,000 no later than March 31, 2014, pursuant to its September 30, 2013 order. On March 28, 2014, the Defendants filed a motion to reconsider the March 20, 2014 order, arguing that the September 30, 2013 order related only to Cassady's interrogatories and request for production of documents to DTS.

[15] On April 3, 2014, Cassady filed a verified motion to show cause in which he asserted that the Defendants had violated the court's September 30, 2013 and March 20, 2014 orders by failing to timely pay Cassady the $10,000 sanction, and requested that the court require the Defendants to show cause why they should not be held in contempt of court for violating the orders.

[16] On April 8, 2014, Cassady filed a Motion to Enforce the March 4, 2014 Order Sanctioning Defendants requesting the court to order the Defendants to immediately pay him $30,000. The same day, the court entered an order that the Defendants' motion to reconsider the March 20, 2014 order was granted,

and the court ordered that the "Order dated March 20, 2014 is hereby vacated as to each Defendant herein with the exception of [DTS]." *Id.* at 148. The court scheduled a hearing for April 22, 2014, on Cassady's April 3, 2014 motion for rule to show cause and his April 8, 2014 motion to enforce the March 4, 2014 order.[1]

[17] On April 11, 2014, the Reeds filed a notice of appeal under Court of Appeals cause number 49A02-1404-PL-248 (the "Second Appeal") with respect to the trial court's March 4, 2014 order and March 13, 2014 denial of the Defendants' motion to reconsider.

[18] On April 22, 2014, the court held the scheduled hearing at which the Reeds did not appear. At the hearing, counsel for the Defendants stated that he had communications with Cassady's counsel regarding the Second Appeal, that Cassady's counsel had indicated his position was going to be that the Second Appeal was untimely as it was based on the denial of a motion to reconsider, and that, not wishing to incur fees unnecessarily, the intention was to withdraw the appeal. The court stated "[s]o if I grant the enforcement, then that's what

---

[1] The CCS entry scheduling the hearing stated: "Defendants ordered to appear." Appellants' Appendix at 11.

you will appeal. You'll file another appeal on that," and the Defendants' counsel replied, "Correct, Judge." Transcript at 268.

[19] With respect to the $30,000 sanction, counsel for the Defendants argued that there had been no discovery served on Michael Reed, that the only set of interrogatories sent to Stuart Reed were not the subject of any motions to compel, and that the only discovery at issue when the court awarded the sanction was discovery to DTS. The court stated, "[w]ell, my recollection is the issues not only were dealing with Stuart, Michael Reed and DTS, but all those non-parties that are below them, which is why, if I recall my jacket entry, I put in that the sanction was to all defendants. To the defendants – I didn't say to all defendant, I just to the defendants and that was my intention, because I still haven't figured out – I mean, they all have stuff with counsel, you guys are representing them on that." *Id.* at 272. Cassady's counsel stated that there had been discussion at a previous hearing regarding the production of email messages of Stuart and Michael Reed. Following additional arguments, the court stated that it was finding DTS in contempt and giving it thirty days to pay $10,000 and that, if the $10,000 was not paid by that date, then the court would issue a warrant for the arrest of the lone remaining officer and hold him until the amount is paid. The court also indicated it would grant Cassady's motion to enforce regarding the $30,000 sanction and that the sanction was joint and several with regard to the Defendants.

[20] The court issued a written order dated April 22, 2014 granting Cassady's motion to enforce the March 4, 2014 order sanctioning defendants and stating

"[t]he Defendants are jointly and severally responsible for the full amount of the March 4, 2014 Order." Appellants' Appendix at 18. A CCS entry dated April 22, 2014, addressed both Cassady's April 3, 2014 motion to show cause related to the $10,000 sanction and his April 8, 2014 motion to enforce the March 4, 2014 order related to the $30,000 sanction and provides:

> Jacket Entry: Matter comes on for hearing on Plaintiff[']s motion to show cause and on [his] motion to enforce 030414 order sanctioning Defendants. Parties show cause, court finds Defendants DTS in contempt and gives DTS 30 days to pay the previously ordered $10,000.00 sanction; if $10,000.00 is not paid within 30 days court will issue a warrant for the arrest of the primary officer as of today's date, of DTS in custody until $10,000.00 is paid. Regarding Plaintiff[']s motion to enforce 030414 order sanctioning defendants, $30,000.00 within 30 days. Defendants are jointly and severally liable as to $30,000.00 sanction. Notice sent.

*Id.* at 12.

[21] On May 20, 2014, the Reeds filed a notice of appeal (the "Third Appeal") from which this appeal arises with respect to the trial court's April 22, 2014 order. Also on that date, the Reeds filed a motion to stay enforcement of the April 22, 2014 order pending appeal. On May 23, 2014, Cassady filed a submission of authority regarding the court's ability to issue an arrest warrant to coerce DTS's compliance with court orders.

[22] On May 29, 2014, the trial court entered an order on the Defendants' motion to stay enforcement of the April 22, 2014 order pending appeal. The court ordered that enforcement of the $30,000 sanction ordered on March 4, 2014 was stayed pending appeal. The court further ordered that enforcement of the

$10,000 sanction ordered against DTS was not stayed, that counsel for DTS was ordered to provide the court with the name of the primary officer of DTS by June 2, 2014, that the court would give DTS until 12:00 p.m. on June 6, 2014 to pay the sanction, and that Cassady was to notify the court if he was not paid the sanction as ordered. On June 3, 2014, the Defendants filed a motion to reconsider and submission of legal authority. The Defendants filed a Notice to Court, file-stamped on June 9, 2014, notifying the court that the sanction issued on September 30, 2013 against DTS in the amount of $10,000 had been paid in full by Stuart Reed and that the payment was made under protest and to prevent the issuance of a bench warrant. On June 13, 2014, the Reeds filed with this Court a motion to dismiss their Second Appeal. On June 16, 2014, this Court issued an order granting the Reeds' motion and ordering that the Second Appeal be dismissed with prejudice.

## *Discussion*

[23] The issue is whether the trial court erred in entering the April 22, 2014 order. The Reeds claim that the court erred when, upon finding DTS in contempt for failure to pay the $10,000 sanction, the court ordered that, if DTS did not comply with the court's order, a bench warrant would be issued for the arrest of DTS's primary officer. The Reeds further assert that the court erred in imposing joint and several liability on all the Defendants with respect to the $30,000 sanction. Cassady maintains that Ind. Trial Rule 37(B)(2)(c) expressly provides that a court may impose sanctions if a party fails to comply with an order to compel discovery, that the Reeds do not appeal the severity or nature

of the sanction but only that it should not be levied upon them, and that, while an officer or director is not normally liable for action taken as a director, the plain language of Ind. Code § 23-1-35-1 indicates that Stuart Reed can be held liable, even in the context of a discovery sanction, for the willful or reckless breach of his duties as an officer.[2]

[24] With respect to the $30,000 sanction, the trial court's April 22, 2014 order granted Cassady's April 8, 2014 motion to enforce the previously-imposed $30,000 sanction and provided that Defendants are jointly and severally liable as to the $30,000 sanction. Decisions concerning the imposition of sanctions for discovery violations fall within the trial court's sound discretion. *Whitaker v. Becker,* 960 N.E.2d 111, 115 (Ind. 2012). Trial judges stand much closer than an appellate court to the currents of litigation pending before them, and they have a correspondingly better sense of which sanctions will adequately protect the

---

[2] Ind. Code § 23-1-35-1(e) provides:

A director is not liable for any action taken as a director, or any failure to take any action, regardless of the nature of the alleged breach of duty, including alleged breaches of the duty of care, the duty of loyalty, and the duty of good faith, unless:

(1) the director has breached or failed to perform the duties of the director's office in compliance with this section; and

(2) the breach or failure to perform constitutes willful misconduct or recklessness.

litigants in any given case, without going overboard, while still discouraging gamesmanship in future litigation. *Id.* Accordingly, we review a trial court's decision to impose discovery sanctions for an abuse of discretion. *Id.*

[25] Ind. Trial Rule 37(B)(2)(c) expressly provides that a trial court may impose sanctions, including outright dismissal of the case or default judgment, if a party fails to comply with an order to compel discovery. *Id.* "We presume that the trial court will 'act in accord with what is fair and equitable in each case,' and thus we will only reverse 'if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law.'" *Wright v. Miller,* 989 N.E.2d 324, 330 (Ind. 2013) (quoting *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind. 1993)); *see Whitaker*, 960 N.E.2d at 116 (noting that the regular practice is to fashion progressive sanctions leading up to a dismissal or default judgment when it is possible to do so). When we review for an abuse of discretion, we do not reweigh the evidence. *Brightpoint, Inc. v. Pedersen,* 930 N.E.2d 34, 38 (Ind. Ct. App. 2010), *trans. denied.*

[26] "The term 'joint and several' means that all parties are bound individually (severally) and as a unit (jointly)." *Konger v. Schillace*, 875 N.E.2d 343, 348 (Ind. Ct. App. 2007) (citing *Scott v. Randle*, 736 N.E.2d 308, 314 (Ind. Ct. App. 2000)).

[27] The $30,000 sanction was imposed by the court in its February 26 and March 4, 2014 orders. We first note that these orders were unambiguous that the

sanction was entered against Defendants as a result of Defendants' conduct. *See* Appellants' Appendix at 10 (the February 26, 2014 CCS entry states in part that "*Defendants* have not timely complied with this Court[']s February 12, 2014 Discovery Order" and that "the Court imposes sanctions against *the Defendants* in the amount of $30,000"); *id.* at 134 (the March 4, 2014 order provided that "the *Defendants* shall . . . pay [] Cassady the amount of thirty thousand [dollars] ($30,000) as a sanction *for the Defendants'* ongoing failure to cooperate in discovery") (emphases added). The Reeds did not timely appeal from the February 26, 2014 order and moved to withdraw their Second Appeal with respect to the March 4, 2014 order, and this Court dismissed the Second Appeal with prejudice.

[28] In addition, the trial court indicated that the issues involved Stuart Reed and Michael Reed. Specifically, at the April 22, 2014 hearing, the court stated that its "recollection is the issues not only were dealing with Stuart, Michael Reed and DTS, but all those non-parties that are below them . . . ." Transcript at 272. The court's view was warranted based upon Cassady's allegations and discovery requests. That is, Cassady alleged that the Reeds decided to distribute DTS's assets to other companies controlled by the Reeds, and Cassady's discovery requests related to the Reeds, DTS, and the companies allegedly owned by the Reeds and the transactions between them.

[29] Specifically, Cassady attached to his April 30, 2013 motion to compel discovery copies of certain discovery requests and letters by his counsel regarding the discovery. The attached interrogatories and request for production of

documents, similar to Cassady's complaint, defined the "Reed Companies" to mean "any and all companies in which either Stuart Reed and/or Michael Reed had or has an ownership interest" and identified a number of those companies. Appellants' Appendix at 57, 70. An exhibit attached to a letter by Cassady's counsel addressed to counsel for Defendants also noted the definition of the Reed Companies and included a list of company names.[3] The interrogatories attached to Cassady's motion to compel discovery show that Cassady had asked DTS to describe the terms under which DTS and/or Specialty provided any services to each of the Reed Companies, including the identity of any vehicles sold, leased, or provided to the Reed Companies, the amount of compensation provided by each of the Reed companies to DTS and/or Specialty, whether DTS and/or Specialty provided any services to the Reed Companies for which DTS and/or Specialty was not compensated and, if so, the nature of the service provided, and the nature of any other transactions between DTS and/or Specialty and the Reed Companies. The request for production of documents attached to Cassady's motion to compel discovery shows that Cassady had asked DTS to produce all documents related to the services provided by DTS and/or Specialty to the Reed Companies or other

---

[3] The exhibit again defined the Reed Companies as any and all companies in which either Stuart Reed and/or Michael Reed had or has an ownership interest and named over 150 companies.

transaction between DTS and/or Specialty and the Reed Companies. In response, Defendants stated in part that they objected to the definition of the Reed Companies, as the entities listed within the definition have differing ownership and are separate entities, and that Defendants continued to reconstruct actions which occurred or should have occurred under Cassady's control.

[30] In a letter dated March 28, 2013, counsel for Cassady stated that DTS's answer was not responsive, that the response was untimely, that Cassady had alleged that the Reeds illegally used their corporate control over DTS to divert profits from DTS to other companies and used DTS's assets for the benefit of the Reed Companies, that "[w]ithout question, all of DTS's business records of its dealings with all such entities are relevant to [Cassady's] claims because they will show . . . that [the Reeds] . . . diverted profits to the Reed Companies," and that the fact that "the Reed Companies may or may not be separate legal entities with differing ownership does not affect these claims." Appellants' Appendix at 101. The letter reiterated that Cassady was requesting all information and records responsive to the entities that meet the definition of the Reed Companies including those listed on an attached exhibit.

[31] At the February 26, 2014 hearing, well after the letter by Cassady's counsel dated March 28, 2013, and after other status hearings, the trial court stated that it was "at [its] wits' end here," that "the only way to get your client's attention is to impose sanctions for the discovery violations," and that it was going to impose $30,000 in sanctions. Transcript at 250. The Reeds did not appear at

the April 22, 2014 hearing after which the court granted Cassady's motion to enforce the sanction order.

[32] Moreover, Defendants admit that Stuart Reed is the president, secretary, treasurer, and sole director of DTS, and that Stuart Reed and Michael Reed are members of Executive Coach, LLC; Cassady alleges that DTS is an Indiana close corporation, that Specialty is a wholly-owned subsidiary of DTS, that DTS has three shareholders, and that Stuart Reed owns fifty-one percent of DTS, Cassady owns forty percent, and Michael Reed owns nine percent; and the Reeds were named Defendants in Cassady's complaint.

[33] Based upon documents in the parties' appendices and the hearing transcripts as set forth in part above, the record reveals there was a factual basis for the trial court's decision to enter the discovery sanction against Defendants jointly and severally, and we cannot say the court abused its discretion in imposing the sanction jointly and severally under the circumstances. *See Scott*, 736 N.E.2d at 315 (holding a factual basis existed for the trial court's determination that four family members be held jointly and severally liable where the court found that all of the members had acted in bad faith and pursued an unreasonable claim in continuing to litigate a matter); *see also Eaton Corp. v. Frisby*, 133 So.3d 735, 747-752 (Miss. 2013) (affirming the trial court's imposition of a joint and several monetary sanction for intentional discovery violations), *reh'g denied*; *In re Zenergy, Inc.*, 968 S.W.2d 1, 11 (Tex. App. 1997) (holding that the trial court did not abuse its discretion in imposing joint and several liability for the monetary sanctions). Based upon the record, reversal of the trial court's April 22, 2014

order granting Cassady's motion to enforce the $30,000 sanction and expressly ordering that Defendants be jointly and severally liable as to the sanction is not warranted.

[34] With respect to the $10,000 sanction, the trial court entered a finding that DTS was in contempt of court for failure to pay the previously ordered $10,000 sanction, and ordered that if the sanction was not paid within thirty days, the court would issue a warrant for the arrest of DTS's primary officer. We review the trial court's ruling on a contempt petition for an abuse of discretion. *S.W. ex rel. Wesolowski v. Kurtic*, 950 N.E.2d 19, 21 (Ind. Ct. App. 2011). We affirm unless, after reviewing the record, we conclude that the trial court's decision is against the logic and circumstances before it and we have a firm and definite belief that a mistake has been made by the trial court. *Id.*

[35] Contempt of court involves disobedience of a court order which undermines the court's authority, justice, and dignity. *City of Gary v. Major,* 822 N.E.2d 165, 169 (Ind. 2005). Ind. Code § 34-47-3-1 provides that "[a] person who is guilty of any willful disobedience of any process, or any order lawfully issued . . . by any court of record . . . is guilty of an indirect contempt of the court that issued the process or order." This statutory definition is a legislative recognition of the courts' inherent power to cite and punish for contempt. *City of Gary*, 822 N.E.2d at 169. "A court's inherent civil contempt powers are both coercive and remedial in nature." *Kurtic*, 950 N.E.2d at 22 (citing *Flash v. Holtsclaw,* 789 N.E.2d 955, 959 (Ind. Ct. App. 2003), *trans. denied*).

[36]     In a civil contempt proceeding, the primary objective is not to punish, but rather, to coerce action or to compensate the aggrieved party. *Id.* In such cases, imprisonment may be imposed in order to coerce compliance with the court order. *Id. See also Duemling v. Fort Wayne Cmty. Concerts, Inc.*, 243 Ind. 521, 525, 188 N.E.2d 274, 276 (1963) ("In a civil contempt action the fine is to be paid to the aggrieved party, and imprisonment is for the purpose of coercing compliance with the order."); *Moore v. Ferguson*, 680 N.E.2d 862, 865 (Ind. Ct. App. 1997) (noting that imprisonment may be used in civil contempt proceedings and that an order of the court that a defendant be committed to jail for a certain period of time unless and until he complies with the original order is not punitive but coercive) (citing *Duemling*, 243 Ind. at 525, 188 N.E.2d at 277), *trans. denied.* Ind. Code § 34-47-3-6 provides that, upon a rule to show cause, "[i]f the defendant [] fails to appear . . . the court may proceed at once, and without any further delay, to attach and punish the defendant for contempt" and that, "[i]f the defendant's answer to the rule does not sufficiently deny, explain, or avoid the facts set forth in the rule, so as to show that no contempt has been committed, the court may proceed to attach and punish the defendant for the contempt, by: (1) fine; (2) imprisonment; or (3) both fine and imprisonment."

[37]     If the court uses imprisonment to coerce the defendant into doing an affirmative act, the court must provide that the imprisonment cease as soon as the act is done. *Moore*, 680 N.E.2d at 865 (citing *Webster v. State,* 673 N.E.2d 509, 512 (Ind. Ct. App. 1996) (citing *State ex rel McMinn v. Gentry,* 229 Ind. 615, 100

N.E.2d 676, 678 (1951)), *trans. denied*). A jail sentence for civil contempt must be coercive rather than punitive in nature, and, to avoid being purely punitive, a contempt order must offer an opportunity for the recalcitrant party to purge himself or herself of the contempt. *In re Paternity of C.N.S.*, 901 N.E.2d 1102, 1106 (Ind. Ct. App. 2009). *See also Nat'l Educ. Ass'n--S. Bend v. S. Bend Cmty. Sch. Corp.*, 655 N.E.2d 516, 523 (Ind. Ct. App. 1995) ("When a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829, 114 S. Ct. 2552, 2558 (1994))).

[38] "A command to the corporation is in effect a command to those who are officially responsible for its affairs." *Reich v. Sea Sprite Boat Co.*, 50 F.3d 413, 417 (7th Cir. 1995) (citing *Wilson v. United States,* 221 U.S. 361, 376, 31 S. Ct. 538, 542 (1911)), *reh'g denied.* "If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience and may be punished for contempt." *Id.*

[39] The trial court imposed the $10,000 sanction at the September 30, 2013 status conference, which was reflected in the CCS. In its March 20, 2014 order, as amended by its April 8, 2014 order, the trial court again ordered DTS to pay the $10,000 sanction. The court noted that the Reeds did not appear for the hearing on the motion to show cause. In its April 22, 2014 order, the court found DTS in contempt and stated that it would issue a warrant for the arrest of

DTS's primary officer if the amount were not paid. Defendants admit Stuart Reed is the president and sole director of DTS, and Cassady alleges that Stuart Reed owns fifty-one percent of DTS and Michael Reed owns nine percent. The information before the court was that DTS acts at the direction of Stuart Reed. In addition, Cassady alleges that Specialty is a wholly-owned subsidiary of DTS, that Stuart Reed is a member of Executive Coach, LLC, and that, at the direction of Stuart Reed and Michael Reed, DTS distributed its assets to other companies controlled by the Reeds. The trial court could conclude, based upon the information before it as set forth above and in the record, that Stuart Reed's actions of not appearing for the contempt hearing and ignoring the court's previous orders directing DTS to take action were intended to prevent the litigation from moving forward. Moreover, we observe that the trial court provided an opportunity for DTS to cure or purge itself of contempt by complying with the court's sanction order within thirty days.

[40] In light of DTS's continued refusal to pay the ordered sanction, the information available to the court that Stuart Reed was the controlling officer and shareholder of DTS, the length of time provided by the court for DTS to pay the sanction or show cause why it was unable to make the ordered payment, and the allegations that DTS, at the direction of the Reeds, distributed DTS's assets to other companies controlled by the Reeds, we cannot say under the particular facts and circumstances of this case that the trial court abused its discretion or erred in finding DTS in contempt and ordering that a warrant for the arrest of DTS's primary officer would be issued if DTS did not comply with the $10,000

sanction order. *See In re Moroun*, 814 N.W.2d 319, 330-334 (Mich. Ct. App. 2012) (noting, citing *Wilson*, *supra*, that individuals who are officially responsible for the conduct of a corporation's affairs are required to obey a court order directed at the corporation, that the trial court had found a construction company in civil contempt for failing to comply with a previous order, that the director of the company did not assert he had no authority over the company or its affairs and that any such assertion would not have been credible, and that there was no dispute regarding the authority of the officer over the company, and holding in part, where the trial court had ordered the director and officer be imprisoned as a result of the contempt determination, that "[w]e cannot say that the trial court's decision to use coercive measures, including incarceration, over other alternatives fell outside the range of principled outcomes or that the decision constituted an abuse of discretion"), *appeal denied*; *Ex parte Chambers*, 898 S.W.2d 257, 260-261 (Tex. 1995) (citing *Wilson*, noting that the record indicated that Chambers was IBS's only officer, its only director, and only shareholder, that Chambers was present when the trial court ordered IBS to pay the initial contempt fine, that since Chambers was the only person capable of compelling IBS to pay the court ordered fine it was clear that IBS's disobedience was due to Chambers's personal refusal to act, and that, since the order to IBS was binding on Chambers, the judgment of contempt against Chambers was not void), *reh'g overruled*. *See also Reich*, 50 F.3d at 417 (7th Cir. 1995) (finding that Smith as the president and sole shareholder of Sea Sprite was no less bound by the court's order than Sea Sprite itself, that a command to the corporation is in effect a command to those who

are officially responsible for its affairs, that if they prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty they are guilty of disobedience and may be punished for contempt, that Smith was obliged to secure Sea Sprite's compliance and instead ensured its defiance, that the formation of another company to evade judgments against Sea Sprite was a further act of contempt, and that a shuffle between two corporations both wholly owned by Smith could avoid the court's order) (citations omitted). *And see Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102, 1115-1117 (N.D. Ill. 2012) (finding that there was clear and convincing evidence that the president of a company acted in contempt of court when he caused the company's assets to be disbursed in violation of a previous order); *Huffman v. Armenia*, 645 S.E.2d 23, 27 (Ga. Ct. App. 2007) (holding in part that the trial court did not abuse its discretion in finding the president of a corporation in contempt of the court's temporary restraining order related to depleting corporate assets), *reconsideration denied*, *cert. denied*. Our review of the record does not leave us with a firm and definite belief that a mistake has been made by the trial court. Reversal of the trial court's April 22, 2014 order is not warranted on this basis.

## *Conclusion*

[41] For the foregoing reasons, we affirm the trial court's April 22, 2014 order in all respects.

[42] Affirmed.

Bailey, J., and Robb, J., concur.