

FILED

Aug 01 2017, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Lee Money
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Monty K. Woolsey
Andrew R. Bloch
Cross, Pennamped, Woolsey &
Glazier, P.C.
Carmel, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Danny L. Young, <br> *Appellant-Respondent,* <br><br> v. <br><br> Lu Ann S. Young, <br> *Appellee-Petitioner* | August 1, 2017 <br><br> Court of Appeals Case No. 49A02-1606-DR-1365 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable David J. Dreyer, Judge <br><br> Trial Court Cause Nos. 49D10-1506-DR-17889 49D10-1507-PO-25018 |

**Mathias, Judge.**

[1] Lu Ann Young ("Lu Ann") sought and obtained a modification of a protective order in her favor against her ex-husband, Danny Young ("Danny"), in Marion Superior Court. From this and collateral rulings, Danny now appeals.

[2] We reverse in part and remand.

# Facts and Procedural Posture

[3]     Danny and Lu Ann were married in 1997. On June 1, 2015, Lu Ann filed for divorce. Less than two months later, on July 29, 2015, Lu Ann sought and obtained a protective order in her favor against Danny ("the Protective Order").[1] On November 20, 2015, Danny and Lu Ann submitted a dissolution settlement agreement for the trial court's approval ("the Agreement"). The Agreement memorialized an agreed modification to the Protective Order whereby Danny could continue to attend services at his and Lu Ann's church "as long as he d[id] not harass, annoy, intimidate or attempt to directly communicate with [Lu Ann] during times they [were] both at the Church." Appellant's App. p. 11. The same day, November 20, 2015, the trial court issued a dissolution decree that incorporated the Agreement in full. *Id.* at 13–14.

[4]     Almost immediately thereafter, Danny began to harass, annoy, and intimidate Lu Ann at church. Accordingly, on February 19, 2016, Lu Ann petitioned to have the Protective Order modified to prevent further harassment.[2] At a modification hearing on April 28, 2016, the court heard the testimony of Lu Ann and several church members in Lu Ann's favor; Danny testified on his

---

[1] The dissolution and protective-order petitions were filed under separate cause numbers and later consolidated.

[2] This was styled as a motion to "revoke" the Protective Order, that is, to return to the status quo before the Protective Order was modified by the Agreement to permit Danny to attend church. *See* Appellant's App. pp. 21–22. But because Danny has not included the Protective Order as originally issued in the record on appeal, we cannot discern what the status quo actually was. In any event, however styled, Lu Ann's action in substance was one to modify a protective order, and we take it as such. *See* Tr. pp. 8–9 (Court: "[S]o [this action is] to modify . . . the current protective order?" Lu Ann by counsel: "That's correct.").

own behalf without support. On May 23, 2016, the trial court entered an order finding that Danny had violated the Protective Order, modifying the Protective Order "so that [Danny] will not come within 100 feet of [Lu Ann] at all times he attends the church, whether intentional[ly] or unintentional[ly]," and awarding Lu Ann attorney's fees. *Id.* at 16.

Danny timely appealed. After the appeal was perfected, on August 19, 2016, the trial court entered two further orders: one awarding Lu Ann appellate attorney's fees, and another "revok[ing]" the "prior modification" of the Protective Order and "reinstat[ing] in full with no limitations" the Protective Order as initially issued. *Id.* at 18.

## Discussion and Decision

Danny presents the following restated issues for our review: (1) whether the trial court had jurisdiction over the subject matter of its August 19, 2016, orders modifying the Protective Order and awarding Lu Ann appellate attorney's fees; (2) whether sufficient evidence supported the trial court's May 23, 2016, finding that Danny violated the Protective Order; (3) whether the May 23, 2016, modification of the Protective Order was appropriate absent the entry of special findings; (4) and whether the Agreement precluded award of attorney's fees to Lu Ann.

### I. Jurisdiction Over the Subject Matter of the August 19, 2016, Orders

Subject matter jurisdiction is the power to hear and decide the general class of actions to which a case belongs. *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006).

The court on appeal acquires jurisdiction over a case when the notice of completion of clerk's record is entered in the chronological case summary ("CSS"). Ind. Appellate Rule 8; *Falatovics v. Falatovics*, 72 N.E.3d 472, 475 (Ind. Ct. App. 2017). When the court on appeal acquires jurisdiction, the court below loses it for most purposes. *Falatovics*, 72 N.E.3d at 479. A judicial act rendered without jurisdiction is void and without effect. *Thomas v. Smith*, 794 N.E.2d 500, 503 (Ind. Ct. App. 2003), *trans. denied*. We review purely legal jurisdictional questions de novo. *Id.*

## A. Protective Order Modification

[8] In this case, the notice of completion of clerk's record was entered in the CCS on July 21, 2016. We acquired jurisdiction on that date. On August 19, 2016, the trial court entered an order "that the prior modification of the Protective Order allowing [Danny] to attend the [church] when [Lu Ann] was present is revoked and the prior Protective Order is reinstated in full with no limitations." Appellant's App. p. 18. The order was not entered in the CCS. *See id.* at 39.

[9] Both parties concede this order was rendered without jurisdiction and is therefore void. We agree. The trial court's August 19, 2016, order as to the Protective Order modification is void and of no force or effect.

## B. Award of Appellate Attorney's Fees

[10] Also on August 19, 2016, the trial court entered an order awarding Lu Ann appellate attorney's fees. In family law cases, trial courts retain jurisdiction to award attorney's fees, including appellate attorney's fees, even after perfection

of an appeal. *J.S. v. W.K.*, 62 N.E.3d 1, 11 n.7 (Ind. Ct. App. 2016); *Thompson v. Thompson*, 811 N.E.2d 888, 929 (Ind. Ct. App. 2004), *trans. denied*; *Pierce v. Pierce*, 702 N.E.2d 765, 769 (Ind. Ct. App. 1998), *trans. denied*; *see* Ind. Code § 31-15-10-1(a) (in dissolution actions, permitting award of reasonable fee "after entry of judgment"). Thus, the trial court had jurisdiction to award Lu Ann appellate attorney's fees on August 19, 2016.

[11] We consider the propriety of the award below.

## II. Sufficient Evidence Supported the Finding That Danny Violated the Protective Order

[12] When reviewing the sufficiency of the evidence supporting modification of a protective order, our standard is familiar. We neither reweigh the evidence nor assess witness credibility. *A.G. v. P.G.*, 974 N.E.2d 598, 598 (Ind. Ct. App. 2012). Considering only the probative evidence and reasonable inferences therefrom in support of modification, we ask whether a reasonable fact-finder could have found the petitioner's allegations proved by a preponderance of the evidence. *Id.* at 598-99. Here, Lu Ann alleged, and the trial court found, that Danny harassed, annoyed, and intimidated Lu Ann at church. Appellant's App. pp. 21 (petition), 15 (order). A reasonable fact-finder could have found these allegations proved by a preponderance of the evidence.

[13] The evidence and inferences favorable to the trial court's decision reveal that, on several occasions starting in January 2016, less than two months after the dissolution decree was issued, Danny intentionally followed and kept close to

Lu Ann while both were at church. Danny would "wait outside of whatever room [Lu Ann] was in[,] including the women's restroom." Tr. p. 11. One Sunday, Lu Ann saw that Danny had arrived early for church and was waiting in his truck in the parking lot. Lu Ann waited for a while for Danny to go inside. When Danny remained in his truck, Lu Ann decided to go inside herself, whereupon Danny immediately got out of his truck and followed her in. Lu Ann started choosing a different seat during services from week to week to avoid Danny sitting near her. The next week, Lu Ann would find that Danny had chosen to sit wherever she had sat the previous week.

[14] Other members of the church testified that they observed Danny "lingering" near Lu Ann, "waiting for her to depart and maybe going out the same door[,]" Tr. pp. 22-23, as well as waiting in the parking lot until Lu Ann got out of her car to get out of his truck. One member observed Danny peering into Lu Ann's car in the parking lot and then hurrying away after checking to see if he had been noticed. Danny's conduct was repeatedly described as "lingering," Tr. p. 32, or "hover[ing]." Tr. p. 25. Members described Lu Ann's annoyance and distress at Danny's behavior.

[15] We appreciate that the church appears to be a small one, and that, particularly in this context, the line between intentional harassment and innocent chance run-ins may be difficult to draw. However, it is precisely for this reason that we defer to the trial court's proximity to the facts and the parties, and particularly to its ability to assess witness credibility. Sufficient evidence supported the trial

court's finding that Danny violated the Protective Order by harassing, annoying, and intimidating Lu Ann at church.

[16] We next consider the propriety of the remedy ordered by the trial court for this violation.

### III. The Trial Court Did Not Make the Findings Required Before Modifying the Protective Order As It Did

[17] In its order of May 23, 2016, the trial court found that Danny "caused [Lu Ann] to feel harassed, annoyed and intimidated by his actions[,]" and thereby violated the Protective Order. Appellant's App. p. 15. As a remedy for this violation, the court then ruled, "Due to [Danny's] violation of the protective order, . . . [t]he Protective Order is modified . . . so that [Danny] will not come within 100 feet of [Lu Ann] at all times he attends Grace Evangelical Church, whether intentional[ly] [or] unintentional[ly]." *Id.* at 16.

[18] The appropriate remedies for such violation were either a contempt order, *S.W. by Wesolowski v. Kurtic*, 950 N.E.2d 19, 22 (Ind. Ct. App. 2011), or modification of the Protective Order to "prohibit the respondent from approaching or entering certain locations where the petitioner may be found." I.C. § 34-26-5-9(i)(2). The latter remedy was also the one selected by the parties in the Agreement. Appellant's App. p. 13 (Danny "shall be banned from going to the Church in the future" if found to have violated Protective Order).

[19] However, a remedy beyond a contempt order or the modification called for in Section 34-26-5-9(i) required findings the trial court did not appear to make.

Indiana's Civil Protective Order Act ("CPOA"), I.C. ch. 34-26-5, "allows a trial court to issue *or modify* a protective order only upon a finding 'that domestic or family violence has occurred.'" *A.G. v. P.G.*, 974 N.E.2d 598, 599 (Ind. Ct. App. 2012) (quoting I.C. § 34-26-5-9(a)) (emphasis added).

> "Domestic or family violence" means, except for an act of self-defense, the occurrence of at least one of the following acts committed by a family or household member:
>
> (1) Attempting to cause, threatening to cause, or causing physical harm to another family or household member.
>
> (2) Placing a family or household member in fear of physical harm.
>
> . . .
>
> For purposes of [CPOA], domestic and family violence also includes stalking (as defined in [the criminal code]) . . . .[3]

I.C. § 34-6-2-34.5. Such a finding "means that a respondent represents a credible threat to the safety of a petitioner" and requires the court to "grant relief necessary to bring about a cessation of the violence or the threat of violence." I.C. § 34-26-5-9(f).

---

[3] Stalking is defined in the criminal code as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." I.C. § 35-45-10-1. "'[H]arassment' means conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." *Id.* § 2. Finally, "'impermissible contact' includes but is not limited to knowingly or intentionally following or pursuing the victim." *Id.* § 3.

[20]    We have said before that, in order to grant a protective order, entry of findings of fact and conclusions thereon under Indiana Trial Rule 52(A) is required, so as to "establish the basis for restricting a person's rights." *Costello v. Zollman*, 51 N.E.3d 361, 366 (Ind. Ct. App. 2016) (distinguishing denial of a protective order), *trans. denied*. To the extent that a protective order modification makes the underlying order more restrictive rather than less, we require the same compliance with Trial Rule 52(A).

[21]    Here, the trial court found that Danny "caused [Lu Ann] to feel harassed, annoyed and intimidated by his actions[,]" and thereby violated the agreed modification to the Protective Order. Appellant's App. p. 15. However, the trial court did not enter a finding that "domestic or family violence" had occurred as defined by statute. I.C. § 34-6-2-34.5. Specifically, while, among other bases, a finding of family or domestic violence may be predicated on a threat or fear of physical harm, or on stalking as defined in the criminal code, the trial court made no findings as to physical harm, nor as to the objective components of criminal stalking. *See* I.C. § 35-45-10-1 (conduct constituting stalking must be such as would "cause a reasonable person" to feel stalked), *id.* § 2 (conduct constituting harassment must be such as would "cause a reasonable person" to feel harassed); *see also* Appellant's Br. at 10-18 (complaining that trial court only found subjective harassment).

[22]    We conclude that these "are not findings sufficient to facilitate appellate review on this issue." *E.W. v. J.W.*, 20 N.E.3d 889, 899 (Ind. Ct. App. 2014) (remanding for entry of findings and conclusions under T.R. 52(A)), *trans.*

*denied*. More specifically, the trial court made one, but not all, of the "findings of fact relevant" to the modification of the Protective Order on a basis other than Section 34-26-5-9(i), *E.W.*, 20 N.E.3d at 899, and thus we cannot discern whether the trial court applied the correct legal standard under Section 34-26-5-9(a). We therefore remand for further proceedings on this issue.

[23] On remand, solely on the basis of the Protective Order violation affirmed above, Lu Ann may seek to have Danny held in contempt. Alternatively or additionally, Lu Ann may ask the trial court for a modification of the Protective Order prohibiting Danny from entering or approaching the church under Section 34-26-5-9(i). But if Lu Ann seeks a modification of the Protective Order other than under Section 34-26-5-9(i), the trial court must find that Section 34-26-5-9(a) has been satisfied, subject to the requirements of Trial Rule 52.[4]

## IV. The Agreement Precluded Award of Attorney's Fees in This Case

[24] Indiana's Dissolution of Marriage Act, I.C. art. 31-15, does not expressly allow for allocation of attorney's fees by dissolution settlement agreement. *See id.* § 2-17(a). Nevertheless, a provision for attorney's fees in a dissolution settlement agreement is enforceable according to its terms unless contrary to law or public

---

[4] The trial court's order of May 23, 2016, prohibited Danny from coming "within 100 feet of [Lu Ann] at all times he attends Grace Evangelical Church, whether intentional[ly] [or] unintentional[ly]." Appellant's App. p. 16. We note that a protective order purporting to prohibit "unintentional" conduct is to that extent unenforceable, both civilly, *Deel v. Deel*, 909 N.E.2d 1028, 1032 (Ind. Ct. App. 2009) ("In order to be held in contempt for failing to comply with a court order, a party must have *willfully* disobeyed the order." (emphasis added)), and criminally. *Thomas v. State*, 936 N.E.2d 339, 340 (Ind. Ct. App. 2010) (noting person commits invasion of privacy by "knowingly or intentionally" violating protective order issued under CPOA), *trans. denied*.

policy, or unless the settlement agreement is vitiated by fraud, duress, lack of consent, or unconscionability. *Pond v. Pond*, 700 N.E.2d 1130, 1136 (Ind. 1998). Because the parties before us contest only the scope of the fee provision in the Agreement, we assume without deciding that such a provision, once accepted by the trial court and incorporated into a dissolution decree, is not subject to later unilateral judicial modification. *See id.* at 1337.[5]

[25] Dissolution settlement agreements are construed like contracts. *Pohl v. Pohl*, 15 N.E.3d 1006, 1009 (Ind. 2014). As question of law, we review their construction de novo. *Id.* Our task is to discern and give effect to the intent of the parties. *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010). If the terms of the agreement are unambiguous, we give the words their plain and ordinary meanings. *Pohl*, 15 N.E.3d at 1009. We construe ambiguities against the drafter of the agreement, *Deel v. Deel*, 909 N.E.2d 1028, 1035 (Ind. Ct. App. 2009) — here, Lu Ann by counsel. Appellant's Br. at 22, Appellant's App. p. 11.

[26] The Agreement provided as follows:

---

[5] While this proposition has not been squarely established by our supreme court, we think it flows naturally from the precedents of that court and this, as well as from the relevant statutes. Critically, in *Pond*, our supreme court held that the trial court lacked authority to reject a limited fee-shifting provision in a valid dissolution settlement agreement that the trial court had otherwise accepted. 700 N.E.2d at 1337. The *Pond* court reversed the trial court "[t]o the extent that the judgment of dissolution rejects *and refuses to enforce*" the fee-shifting provision. *Id.* (emphasis added). We cannot perceive how a trial court could lack discretionary authority to reject an agreed fee provision like that at bar, but still retain discretionary authority to modify or enforce it. We note that the Agreement provided that it "may not be altered, changed, or modified except in writing, signed by each of the Parties and approved by a court of competent jurisdiction." Appellant's App. p. 10.

## ARTICLE 1

## SCOPE OF AGREEMENT

1.01. <u>Issues Settled</u>. The subject matter of this Agreement is the settlement of all issues which exist between Wife and Husband attendant upon the dissolution of their marriage, including without limiting the generality thereof, the following: . . .

> b. Any and all claims Husband and Wife may have against each other or arising out of the marital relationship or the circumstances of that relationship. . . .

## ARTICLE III

## MARITAL DEBTS AND OBLIGATIONS

3.01. <u>Debts and Obligations of Husband</u>. Husband shall be solely responsible for the debts and obligations in his individual name and all debts and obligations incurred by him in the Parties' names since the date of separation. Husband represents that there are no other marital debts or obligations. Husband agrees to defend, indemnify and hold harmless Wife from and against any and all liability, expense, attorney's fees, loss or damage which may be incurred or sustained by Wife, directly or indirectly, arising out of, founded upon, or resulting from the failure of Husband to perform, satisfy, or pay debts and obligations imposed by this Agreement including, but not limited to, all obligations under Article II ["Settlement of Property Rights"] . . . .

## ARTICLE IV

## ATTORNEY'S FEES AND LITIGATION EXPENSES

4.01. <u>Payment of Attorney's Fees and Litigation Expenses</u>. Each Party shall be responsible and pay any and all attorney's fees and litigation expenses incurred by each Party without contribution from the other Party.

## ARTICLE V

## MISCELLANEOUS PROVISIONS

. . .

>5.15. <u>Protective Order</u>. The court issued a Protective Order under Cause No. 49D10-1507-PO-025018 which was consolidated with this action. Wife agrees to modify the Protective Order to allow Husband to attend Grace Evangelical Free Church located at Arlington and Southport Road as long as he does not harass, annoy, intimidate or attempt to directly communicate with Wife during times they are both at the Church. In the event Husband does so he shall be banned from going to the Church in the future.

Appellant's App. pp. 3, 6–7, 9–11.

[27] The Agreement includes within its scope any claim "arising out of the marital relationship or the circumstances of that relationship." § 1.01, Appellant's App. p. 3. The Protective Order clearly arose out of the circumstances of Danny and Lu Ann's marital relationship — indeed, apparently out of the dissolution proceedings themselves — and proceedings on the Protective Order were clearly in their contemplation when they memorialized the modification of the Protective Order in the Agreement. Thus, the provision in Section 4.01 that each party bear her own attorney's fees applied to proceedings on the Protective Order.

[28] Lu Ann argues that Section 3.01 provided for attorney's fees in this case because it was an action "arising out of, founded upon, or resulting from the failure of [Danny] to perform . . . [an] obligation[] imposed by this agreement."

§ 3.01, Appellant's App. p. 6. However, compliance with the Protective Order issued under CPOA was not an obligation imposed by the Agreement; compliance was an obligation imposed by the trial court on statutory authority according to statutory criteria. Were this otherwise, this action would have been one to enforce the Agreement, not one to modify the Protective Order. *See* Tr. pp. 8-9 (Court: "[S]o [this action is] to modify . . . the current protective order?" Lu Ann by counsel: "That's correct."). Even without this language, we think Section 3.01 clearly refers not to disputes between Danny and Lu Ann, but to disputes involving Danny or Lu Ann and a third party. Lu Ann of course has not demanded, nor could she demand, that Danny "defend [and] indemnify" her in this case. *Id.*

[29] The Agreement provided that each party should bear her own attorney's fees in this case. We therefore vacate the trial court's order of August 19, 2016, awarding attorney's fees to Lu Ann, and its order of May 23, 2016, to the extent it did the same.

## Conclusion

[30] The trial court's August 19, 2016, order purporting to modify the Protective Order was entered without jurisdiction and is therefore void. The trial court's award of attorney's fees to Lu Ann was contrary to the Agreement. Its August 19, 2016, order awarding attorney's fees is therefore vacated, as is its May 23, 2016, order to the extent it awards attorney's fees. Sufficient evidence supported the trial court's finding that Danny violated the protective order, but we remand

for further proceedings consistent with this opinion to determine the appropriate remedy.

[31] Reversed in part and remanded.

Kirsch, J., and Altice, J., concur.