## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 21 2020, 6:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Julie C. Dixon
Bryan L. Ciyou
Alexander N. Moseley
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Alan D. Wilson
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Charles Huffer,

*Appellant-Respondent,*

v.

Chelsy Huffer,

*Appellee-Petitioner.*

February 21, 2020

Court of Appeals Case No.
19A-DR-1150

Appeal from the
Carroll Circuit Court

The Honorable
Thomas R. Lett, Special Judge

Trial Court Cause No.
08C01-1609-DR-82

**Kirsch, Judge.**

[1] Charles Huffer ("Father") appeals the trial court's decree of dissolution of his marriage to Chelsy Huffer ("Mother") and its subsequent order on Father's

motion to correct error. Father raises five issues for our review, which we restate as:

> I. Whether the trial court abused its discretion when it issued a contempt order sentencing Father to thirty days in jail but suspending the sentence on the conditions that he submit to a drug test and strictly comply with court orders;

> II. Whether the trial court erred in awarding sole physical and legal custody of the parties' children to Mother because the evidence did not support the findings and the findings did not support the conclusions;

> III. Whether the trial court erred in not giving Father credit against his child support arrearage amount for the overnights the children spent with him and for Father's payment of health insurance while the action was pending;

> IV. Whether the trial court erred in its distribution of the marital property because it inaccurately found that there was no debt associated with the truck awarded to Father; and

> V. Whether the trial court abused its discretion when it awarded Mother attorney fees associated with the finding of contempt.

We affirm in part, vacate in part, and remand.

## Facts and Procedural History

Father and Mother (together, "the Parties") were married on March 24, 2012, and two children ("the Children") were born of the marriage. *Appellant's App.*

*Vol. 2* at 23. Prior to the marriage, the Parties entered into an Antenuptial Agreement on March 12, 2012 ("the Antenuptial Agreement"), which they agreed was binding and enforceable. *Id*. at 117; *Tr. Vol. 2* at 109; *Tr. Vol. 3* at 124. The Antenuptial Agreement contained a provision stating, "[t]he parties hereby waive and release each other from any and all other claims to property, support, maintenance, and alimony, whether temporary or permanent, as well as attorney fees, to the full extent that they may now or in the future legally do so . . . ." *Appellant's App. Vol. 2* at 120.

[4] The Parties separated on August 24, 2016. *Id*. at 23. On September 12, 2016, Mother filed a petition for dissolution, and on January 4, 2017, the trial court entered a Provisional Order. *Id*. at 52, 54. The Provisional Order determined that the Parties were to have joint legal custody of the Children and that Mother was to have primary physical custody of the Children. *Id*. at 54. The trial court found that Father was to pay child support in the amount of $298.00 per week and that the child support obligation should be retroactive to the date of the filing of the petition for dissolution. *Id*. At the time of the Provisional Order, Father was ordered to maintain health insurance for the Children. *Id*.

[5] Over the course of the dissolution proceedings, Mother filed an emergency modification of custody petition, a motion to clarify whether Father was to receive overnights, as well as numerous contempt citations against Father. *Id*. at 58, 78, 81, 133. As part of an Agreed Entry and Order, the Parties stipulated to hire and utilize a parenting coordinator to be a "conduit for communications between the [P]arties that involve the [C]hildren, parenting time, and parenting

decisions." *Id.* at 64. On February 13, 2018, Father filed a motion to modify child support requesting that the amount of child support ordered in the Provisional Order be modified to give Father credit for paying for the Children's health insurance and for the proper amount of overnights that he exercised with the Children. *Id.* at 73-77. On March 19, 2018, the trial court held a hearing on that motion and the other pending motions; however, the hearing was not completed and was never reset for completion. *Tr. Vol. 2* at 2, 14, 68-69.

[6] The final hearing on the petition for dissolution was held on September 12 and 13, 2018. At that hearing, the trial court stated that evidence would be heard at that time on all pending motions, and "everything we've done so far that hasn't had a ruling or a resolution, [will] just be brought forward to today." *Id.* at 72. Prior to the hearing, Father had filed a request for specific findings and conclusions pursuant to Indiana Trial Rule 52, and after the hearing, the Parties filed proposed findings and conclusions. *Appellant's App. Vol. 2* at 158, 161-82, 183-208.

[7] On November 16, 2018, the trial court issued its findings of fact and conclusions thereon, granting the petition for dissolution of marriage and determining issues of child custody, child support, and property division ("the Decree"). *Id.* at 22-46. In the Decree, the trial court awarded Mother sole custody of the Children, ordered Father to pay child support, and divided the marital property. *Id.* In its determination, the trial court used the $298.00 per week obligation from the Provisional Order to calculate that Father had not

paid his full amount of child support, and that an arrearage existed. *Id*. at 24. The Decree determined that Father owed $3,377.00 in child support arrearage. *Id*. at 24, 41. The trial court also found Father to be in indirect contempt of the court for failing to follow several of the trial court's orders and binding recommendations and sentenced Father to thirty days in jail with the sentence suspended under the conditions that Father strictly follow all orders of the trial court and immediately submit to a previously-ordered drug screen. *Id*. at 42. The trial court ordered Father to pay Mother's attorney fees for the contempt finding in the amount of $3,000.00 as a penalty for the indirect contempt. *Id*. at 42-43.

[8] On December 17, 2018, Father filed a motion to correct error arguing that the trial court erred in not giving him credit for the correct number of overnights in the calculation of child support in the Decree and in not giving him credit for his payment of health insurance for the Children and for the correct number of overnights as it pertained to child support ordered in the Provisional Order, which resulted in an arrearage. *Id*. at 214-16. Father also argued, among other things, that the trial court erred in dividing the marital estate, in its finding of indirect contempt and ordering him to pay attorney fees, and in not making a determination of who has legal custody of the Children. *Id*. at 218-21. After a hearing, the trial court issued an order on Father's motion to correct error, finding that it erred by crediting Father with the incorrect number of overnights in the calculation of child support in the Decree and correcting that error to reflect the correct number, which lowered Father's child support payment. *Id*.

at 47. The trial court also found it erred in not specifically designating a custodial parent and awarded Mother sole legal and physical custody. *Id*. at 49. The trial court further found no error in its contempt finding, award of attorney fees, division of marital property, and arrearage determination. *Id*. Specifically, in reference to the arrearage determination, the trial court found that there had been no request to reconsider the child support determination calculated in the provisional order. *Id*. Father now appeals.

## Discussion and Decision

## I. Contempt

[9] Father argues that the trial court abused its discretion when it found him in indirect contempt of court. Specifically, he contends that the sentence of thirty days in jail was punitive and not designed to coerce compliance and was, therefore, erroneously imposed. We review the trial court's ruling on a contempt petition for an abuse of discretion. *Reed v. Cassady*, 27 N.E.3d 1104, 1114 (Ind. Ct. App. 2015), *trans. denied*. We will affirm unless, after reviewing the record, we conclude that the trial court's decision is against the logic and circumstances before it, and we have a firm and definite belief that a mistake has been made by the trial court. *Id.*

[10] Contempt of court involves disobedience of a court order that undermines the court's authority, justice, and dignity. *Id*. (citing *City of Gary v. Major,* 822 N.E.2d 165, 169 (Ind. 2005)). A person who willfully disobeys a lawfully issued court order is guilty of indirect contempt. Ind. Code § 34-47-3-1. "'A

court's inherent civil contempt powers are both coercive and remedial in nature.'" *S.W. ex rel. Wesolowski v. Kurtic,* 950 N.E.2d 19, 22 (Ind. Ct. App. 2011) (quoting *Flash v. Holtsclaw,* 789 N.E.2d 955, 959 (Ind. Ct. App. 2003), *trans. denied*). In a civil contempt proceeding, the primary objective is not to punish, but rather, to coerce action or to compensate the aggrieved party. *Id.* In such cases, imprisonment may be imposed in order to coerce compliance with the court order. *Id.* "If the court uses imprisonment to coerce the defendant into doing an affirmative act, the court must provide that the imprisonment cease as soon as the act is done." *Reed*, 27 N.E.3d at 1114 (citing *Moore v. Ferguson,* 680 N.E.2d 862, 865 (Ind. Ct. App. 1997), *trans. denied*). "A jail sentence for civil contempt must be coercive rather than punitive in nature, and, to avoid being purely punitive, a contempt order must offer an opportunity for the recalcitrant party to purge himself or herself of the contempt." *Id.*

[11] Here, in the Decree, the trial court found Father in indirect contempt of the court for failing to follow several of the court's orders and binding recommendations that had been issued. *Appellant's App. Vol. 2* at 42. Specifically, Father failed to follow the trial court's orders by failing to communicate about the children through the parenting coordinator and instead, repeatedly communicating directly with Mother, and by refusing to submit to a drug screen after being ordered to do so. *Id.* at 42, 63-66, 68, 108. The trial court sentenced Father to thirty days in jail and suspended the execution of the sentence under the following terms and conditions:

> a. [Father] shall strictly comply with all orders of the court.

b. [Father] shall immediately submit to a hair follicle and urine drug screen. [Father] shall report to MedOne/St. Vincent Immediate Care . . . within 48 hours of the Order.

c. The results of the hair follicle and urine drug screen shall be provided to [Mother's] and [Father's] counsel within 24 hours of receipt.

*Id*. at 42.

[12] The trial court's order that Father serve time in jail for failing to follow numerous orders of the court by repeatedly communicating directly with Mother instead of the parenting coordinator and by failing to submit to a drug screen contained an opportunity for Father to purge himself of the contempt. Although the trial court sentenced Father to thirty days in jail, the sentence was suspended on the conditions that Father immediately submit to a drug screen and report the results and that he strictly comply with the trial court's orders in the future. These conditions offered an opportunity for Father to cure or purge himself of the contempt, which is necessary to find a sanction coercive and not punitive. Because we find that the trial court's contempt sanction was coercive and not punitive, we conclude that the trial court did not abuse its discretion when it found Father in indirect contempt of court.[1]

---

[1] Father also seems to attempt to argue that the trial court abused its discretion when it found him in contempt because it failed to give him adequate notice and an opportunity to be heard regarding the contempt charges. To the extent that this is his argument, he has waived it for failure to present a cogent argument. *See Martin v. Hunt*, 130 N.E.3d 135, 137 (Ind. Ct. App. 2019) ("Failure to present a cogent argument results in waiver of the issue on appeal.").

## II. Custody

[13] The trial court's decisions regarding child custody are reviewed only for an abuse of discretion. *Purnell v. Purnell*, 131 N.E.3d 622, 627 (Ind. Ct. App. 2019) (citing *Sabo v. Sabo*, 858 N.E.2d 1064, 1068 (Ind. Ct. App. 2006)), *trans. denied*. There is a well-established preference in Indiana for granting latitude and deference to trial judges in family law matters. *Id*. (citing *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016)). Here, Father requested specific findings and conclusions pursuant to Indiana Trial Rule 52. "The purpose of Trial Rule 52(A) is 'to provide the parties and the reviewing court with the theory upon which the trial judge decided the case in order that the right of review for error may be effectively preserved.'" *In re Paternity of S.A.M.*, 85 N.E.3d 879, 885 (Ind. Ct. App. 2017). When a trial court enters findings of fact and conclusions of law pursuant to Trial Rule 52, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Hazelett v. Hazelett*, 119 N.E.3d 153, 157 (Ind. Ct. App. 2019) (citing *Tompa v. Tompa*, 867 N.E.2d 158, 163 (Ind. Ct. App. 2007)). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of the witnesses but consider only the evidence most favorable to the judgment. *Id.*

[14] Father argues that the trial court erred when it awarded sole legal and physical custody of the Children to Mother. He specifically contends that there are no findings or conclusions that supported that it was in the best interests of the Children for Mother to have sole legal and physical custody as required by Indiana Code section 31-17-2-8. Father further asserts that the trial court's findings are improper because they are merely recitations of what witnesses testified to at the hearing or other evidence presented and are not actual findings that the trial court determined to be true. Father also claims that the findings do not address the factors contained in the statute and, instead, focus on the relationship between Mother and Father without findings on how that relationship affects the Children.

[15] We agree with Father that the trial court's findings are not appropriate. Findings of fact must be specific enough to provide the reader with an understanding of the juvenile court's reasons, based on the evidence, for its findings of ultimate fact. *Moore v. Ind. Family & Soc. Servs. Admin.,* 682 N.E.2d 545, 547 (Ind. Ct. App. 1997). "A finding of fact must indicate, not what someone said is true, but what is determined to be true, for that is the trier of fact's duty." *Hazelett*, 119 N.E.3d at 159. Therefore, findings "'indicat[ing] that the testimony or evidence was this or the other are not findings of fact.'" *Pack v. Ind. Family & Soc. Servs. Admin.*, 935 N.E.2d 1218, 1223 (Ind. Ct. App. 2010) (quoting *Moore*, 682 N.E.2d at 547). In the present case, the majority of the trial court's findings pertaining to custody are merely a recitation of witness testimony, portions of relevant orders, descriptions of evidence admitted, each

party's custody requests, and citations to relevant legal authority. Excluding these insufficient findings and undisputed background information, the remaining findings and conclusions pertaining to the trial court's custody determination are not sufficient to determine whether the trial court's findings support its custody determination. Therefore, we vacate all of the findings purporting to apply to or support the determination of legal and physical custody of the Children and remand in order for the trial court to enter appropriate and adequate findings that reflect what the trial court determined to be true. *See Hazelett*, 119 N.E.3d at 159 (remanding a dissolution case to the trial court with instructions to enter proper findings of fact and conclusions thereon to support the trial court's custody determination because the trial court's original findings were not sufficient and did not reflect what the trial court found to be true).

## III. Child Support

[16] "A decision to grant or deny a motion to correct error and decisions regarding child support, such as modification of child support, are also reviewed for an abuse of that discretion." *Lovold v. Ellis*, 988 N.E.3d 1144, 1149-50 (Ind. Ct. App. 2013). An abuse of discretion occurs when a trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.* at 1150. When reviewing a decision for an abuse of discretion, we consider only the evidence and reasonable inferences favorable to the judgment. *Id.*

[17]     Father contends that the trial court abused its discretion when it calculated his child support arrearage. Specifically, he alleges that the trial court failed to modify the provisional order to give him credit for health insurance payments he made for the Children and for the correct number of overnights he exercised with the Children during the time the dissolution proceedings were pending. Father argues that, by not giving him the proper credit for the health insurance and overnights, the trial court erroneously calculated his child support obligation in the Provisional Order, which resulted in an incorrect arrearage calculation.

[18]     A provisional order is designed to maintain the status quo of the parties during the dissolution proceedings. *Del Priore v. Del Priore*, 65 N.E.3d 1065, 1074 (Ind. Ct. App. 2016) (citing *Mosley v. Mosley,* 906 N.E.2d 928, 929 (Ind. Ct. App. 2009)), *trans. denied*. It is an interim order that terminates when the final dissolution decree is entered. *Id.* (citing Ind. Code § 31-15-4-14). "The terms of a provisional order may be revoked or modified before the final decree on a showing of the facts appropriate to revocation or modification." Ind. Code § 31-15-4-15. "Any disparity or inequity in a provisional order -- can and should -- be adjusted in the trial court's final order." *Mosley*, 906 N.E.2d at 930.

[19]     In the present case, on January 4, 2017, the trial court entered a Provisional Order, finding the Parties were to have joint legal custody of the Children, that Mother should have primary physical custody of the Children, that Father was to pay child support in the amount of $298.00 per week, and that Father was ordered to maintain health insurance on the Children. *Appellant's App. Vol. 2* at

54. On the Child Support Obligation Worksheet, Father was given parenting time credit for 96-100 overnights, but there was no amount given for credit for the Children's weekly health insurance. *Id.* at 56. On February 13, 2018, Father filed a motion to modify the child support ordered in the Provisional Order and asserted that he was solely responsible for paying for the Children's health insurance but was not given credit for it and that he was not given credit for the proper amount of overnights. *Id.* at 73-74. On March 19, 2018, the trial court held a hearing on this motion in addition to other pending motions; however, the hearing was not completed and was never reset for completion. *Tr. Vol. 2* at 2, 14, 68-69. At that hearing, Father testified that he had 141 overnights with the Children, and he testified and presented evidence that he paid $113.56 per week for health insurance for the Children. *Id.* at 25-27. The final hearing on the petition for dissolution was held on September 12 and 13, 2018, and at the beginning of the hearing, the trial court stated that evidence would be heard at that time on all pending motions, and "everything we've done so far that hasn't had a ruling or a resolution, [will] just be brought forward to today." *Id.* at 72. In the Decree, the trial court, using the $298.00 child support amount from the Provisional Order, calculated Father's child support arrearage to be $3,377.00. *Appellant's App. Vol. 2* at 24. After Father filed a motion to correct error, the trial court issued an order and stated:

> [Father] contends that the court erred in finding that he owes child support arrearage from the Provisional Order. The court finds that the Provisional Order was entered January 4, 2017 and calculated the child support obligation to be $298[.00]. There was no request to reconsider this amount filed by [Father],

therefore, this is the Provisional Support Order. The court did not err by enforcing its Order and finding that [Father] has a child support arrearage.

*Id*. at 49.

[20]     We conclude that the trial court abused its discretion when it found in its order on the motion to correct error that Father did not file a request to reconsider the child support amount from the provisional order. Father did, in fact, file a motion to modify the child support amount ordered in the provisional order, and a hearing was held on that motion, at which evidence was presented of the amount of weekly health insurance Father paid for the Children and the actual amount of overnights that Father had with the Children. Although the hearing was not completed and no ruling was made on Father's motion at that time, at the commencement of the final hearing, the trial court incorporated all prior hearings and exhibits into the final hearing. "The parent who pays the weekly premium cost for the child(ren)'s health insurance should receive a credit towards his or her child support obligation in most circumstances." Ind. Child Support Guideline 3(G)(3). "A credit should be awarded for the number of overnights each year that the child(ren) spend with the noncustodial parent." Child Supp. G. 6.

[21]     In its Decree, the trial court made no findings or conclusions regarding Father's motion to modify his provisional child support and the health insurance and

parenting time credits he requested.[2]  The terms of the Provisional Order could have been modified before the final Decree on a showing of the facts appropriate to modification, Ind. Code § 31-15-4-15, and any disparity or inequity in the Provisional Order could have been and should have been adjusted in the trial court's final order, *Mosley*, 906 N.E.2d at 930.  Because of its lack of resolution or any findings regarding Father's motion to modify his preliminary child support obligation ordered in the Provisional Order, we conclude that the trial court abused its discretion.  We, therefore, vacate the portion of the order dealing with child support in the Provisional Order and Father's resulting arrearage and remand to the trial court to enter findings and conclusions regarding Father's motion that are consistent with the Indiana Child Support Guidelines, and if a deviation is necessary, to enter findings supporting the deviation.

## IV.  Property Division

[22]  Father argues that the trial court abused its discretion when it divided the marital property because it based its property division on an erroneous finding of fact.  Father contends that the trial court mistakenly found that there was no loan on the Silverado pick-up truck he was awarded in the division of marital

---

[2] The trial court made one finding, in which it stated:  "There was not testimony as to how much [Father]'s [health] insurance costs[;] however the Child Support Obligation Worksheet entered into evidence by [Father] indicates $113.56 a week for health insurance." *Appellant's App. Vol. 2* at 23.  As Father did present evidence at the March 19, 2018 hearing regarding what his health insurance premiums were for the Children, we do not know if this finding means that the trial court chose to disregard Father's evidence as not being credible or if the trial court merely forgot that the evidence had been presented.

property when there was in fact a $17,000.00 loan on the truck. He asserts that, based on the trial court's division of property, which consisted of awarding him the Silverado and awarding Mother the Tahoe that had no debt attached to it, the result was an unequal division, and he is entitled to an equalization payment.

[23] The division of marital property is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Love v. Love,* 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014). We will reverse a trial court's division of marital property only if the result is clearly against the logic and effect of the facts and circumstances, including the reasonable inferences to be drawn therefrom. *Luttrell v. Luttrell,* 994 N.E.2d 298, 301 (Ind. Ct. App. 2013), *trans. denied.* When we review a claim that the trial court improperly divided marital property, we consider only the evidence most favorable to the trial court's disposition of the property without reweighing evidence or assessing witness credibility. *In re the Marriage of Marek*, 47 N.E.3d 1283, 1288-89 (Ind. Ct. App. 2016), *trans. denied.* "Although the facts and reasonable inferences might allow for a conclusion different from that reached by the trial court, we will not substitute our judgment for that of the trial court." *Id*. at 1289.

[24] Because the Parties had an Antenuptial Agreement, the marital estate consisted only of the Silverado and any associated debt, the Tahoe and any associated debt, an IRS debt, and the Parties' personal property. *Appellant's App. Vol. 2* at 36. In the Decree, the trial court found that the Tahoe owned by the Parties was valued at $20,000.00 and had been paid in full at the time of the final

hearing. *Id*. at 24. Although Father testified that the Silverado owned by the Parties had a loan on it for $17,000.00, the trial court found that neither party entered any loan documentation regarding the Silverado into evidence. *Id*. at 25. The trial court awarded the Tahoe and any associated indebtedness to Mother and awarded the Silverado and any associated indebtedness to Father. *Id*. at 36.

[25] Father asserts that the trial court's award of the vehicles to the Parties resulted in an unequal division of the marital property because he was given a vehicle with a $17,000.00 loan on it, while Mother was given a vehicle that had no debt on it. Although Father testified at the hearing, and contends now, that there is a $17,000.00 loan on the Silverado, there was no documentation admitted at the hearing to support this assertion. It was within the trial court's discretion to not believe Father's statement about the indebtedness on the Silverado without proper documentation, and we do not judge witness credibility or reweigh the evidence on appeal. *In re Marek*, 47 N.E.3d at 1288-89. Further, even if we were to find that Father was given an unequal share of the debt by being given the debt associated with the Silverado, the trial court found that "an equal division [of the marital estate] would not be just and reasonable due to the economic circumstances of each party at the time of the disposition of the property and the earning abilities of the parties related to the final division of property." *Appellant's App. Vol. 2* at 37. The trial court did not abuse its discretion in its division of the marital property.

# V.   Attorney Fees

Father argues that the trial court erred when it ordered him to pay Mother's attorney fees for the contempt finding in the amount of $3,000.00.  He asserts that this award of attorney fees was erroneous because the Parties had an Antenuptial Agreement that specifically stated that they would waive and release each other for claims of attorney fees.

A trial court has inherent authority to award attorney fees for civil contempt. *J.S. v. W. K.*, 62 N.E.3d 1, 9 (Ind. Ct. App. 2016).  "In other words, no statutory sanction is needed, as a court's power to enforce compliance with its orders and decrees duly entered is inherent."  *Kahn v. Baker*, 36 N.E.3d 1103, 1116 (Ind. Ct. App. 2015), *trans. denied*.  "Accordingly, apart from any statutory authority, a court has the inherent authority to enforce its orders and to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions."  *Id*.  We review the trial court's ruling on a contempt petition for an abuse of discretion, and we will neither reweigh the evidence nor reassess the credibility of witnesses.  *J.S.*, 62 N.E.3d at 9.  We will affirm the trial court's decision unless it is against the logic and circumstances before it and we have a firm and definite belief that a mistake has been made.  *Id.*

Here, the trial court found Father in indirect contempt for failing to abide by several of the trial court's orders and ordered him to pay Mother's attorney fees for the finding of contempt in the amount of $3,000.00.  *Appellant's App. Vol. 2* at 42-43.  In ordering this, the trial court acknowledged that the Antenuptial

Agreement provided that the Parties shall pay their own attorney fees but found that the agreement did not apply to the contempt finding. *Id*. at 42. The trial court did not abuse its discretion in ordering Father to pay Mother's attorney fees for the contempt finding. Evidence was presented that Father repeatedly violated the trial court's orders and testified that he knowingly and intentionally disobeyed the trial court's orders. *Tr. Vol. 3* at 202-12. As a result of Father's contempt, Mother was forced to file citations and contempt motions and suffered damages. Because the trial court had the inherent authority to enforce its orders and to compensate Mother as an aggrieved party for damages resulting from Father's acts of contempt, we conclude that the trial court did not abuse its discretion in ordering Father to pay $3,000.00 in attorney fees.[3]

[29] Affirmed in part, vacated in part, and remanded.

Bailey, J., and Mathias, J., concur.

---

[3] In his reply brief, Father asserts that the present case is very similar to *Young v. Young*, 81 N.E.3d 250 (Ind. Ct. App. 2017), where an award of attorney fees related to a protective order modification was found to be erroneous because the parties had entered into a dissolution settlement agreement, which contained a provision that each party shall be responsible for their own attorney fees. *Id*. at 257-59. We find the *Young* case to be distinguishable from the present case because that case did not deal with a contempt finding and the trial court's inherent authority to award attorney fees for civil contempt.